J-S81031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.J.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1896 EDA 2016 |

Appeal from the Decree June 3, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000408-2016,
CP-51-DP-0002947-2014


BEFORE:  BOWES, J., MOULTON, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED NOVEMBER 30, 2016**

M.W. ("Mother") appeals from the June 3, 2016, decree involuntarily terminating her parental rights to her son, I.J.W., born in December of 2014. Upon careful review, we affirm.[1]

We summarize the relevant factual and procedural history as follows. I.J.W. was born with methadone in his system.   Trial Court Opinion

---

* Former Justice specially assigned to the Superior Court.

[1] By a separate decree dated and entered on June 3, 2016, the trial court involuntarily terminated the parental rights of J.B. ("Father"). Father has not filed a notice of appeal from the decree.

("T.C.O."), filed 7/22/16, at 1;[2] Notes of Testimony ("N.T."), 6/3/16, at 13.

Before his discharge from the hospital, I.J.W. was placed in the custody of the Philadelphia County Department of Human Services ("DHS"). T.C.O. at 1. The trial court adjudicated him dependent on December 29, 2014. I.J.W. has resided in the same pre-adoptive home since his placement. N.T. at 25.

Although Mother has six children, none of them are in her care. N.T. at 14. Mother's parental rights were involuntarily terminated with respect to two of her children. *Id.* In addition, she is an indicated perpetrator of child abuse resulting from an incident involving one of her other children.[3] *Id.* As a result, by order dated July 14, 2015, the court found aggravated circumstances existed as to Mother. *Id.* at 13-14; Order, 7/14/15.

The court set I.J.W.'s permanency plan as reunification. DHS assigned Mother Single Case Plan ("SCP") objectives requiring her to complete drug and alcohol treatment; mental health treatment; and to obtain appropriate housing and employment. T.C.O. at 3.

On May 6, 2016, DHS filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8),

_____

[2] The trial court's opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) is unpaginated. For ease of reference, we have assigned page numbers.

[3] With respect to the incident, Mother alleged that Father injured one of her male children. N.T. at 29. Mother agreed on cross-examination that she waited a day and a half to seek medical attention for the child because she "was in bed" due to "going through [drug] withdrawal." *Id.* at 65.

and (b). The trial court held a hearing on June 3, 2016, during which DHS presented the testimony of Marvella Morris, the Community Umbrella Association ("CUA") social worker, and William Russell, Ph.D., who performed a parenting capacity evaluation of Mother. Mother testified on her own behalf, and she presented the testimony of Chanel Randolph, a Family School social worker.

By decree dated and entered on June 3, 2016, the trial court involuntarily terminated Mother's parental rights. Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Rule 1925(a)(2)(i) and (b).[4] The trial court filed its Rule 1925(a) opinion on July 22, 2016.

On appeal, Mother presents the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other [ ] pursuant to 23 Pa.C.S.A. sections 2511(a)(1) where [M]other presented evidence that she substantially met her FSP goals and tried to perform her parental duties[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other [ ] pursuant to 23 Pa.C.S.A. sections 2511(a)(2) where [M]other presented evidence that she has remedied her situation by attending family

---

[4] The trial court also issued a goal change order dated June 3, 2016, and Mother timely filed a notice of appeal. We conclude that Mother has waived all issues pertaining thereto for her failure to set them forth in her brief. **See Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved. . . .") (citations omitted).

school, continuing drug and alcohol treatment and receiving mental health treatment[?]  Mother has the present capacity to care for [I.J.W.].

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other [ ] pursuant to 23 Pa.C.S.A. sections 2511(a)(5) where evidence was provided to establish that the child was removed from the care of his [M]other, and that [M]other is now capable of caring for her child[?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other [ ] pursuant to 23 Pa.C.S.A. sections 2511(a)(8) where evidence was presented to show that [M]other is now capable of caring for her child since she has completed parenting and continued drug and alcohol treatment, mental health treatment and family school[?] Additionally, [M]other completed her parenting capacity evaluation.

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other [ ] pursuant to 23 Pa.C.S.A. sections 2511(b) where evidence was presented that established the child had a strong parental bond with h[is] [M]other[?]

Mother's Brief at 7.

We consider Mother's issues mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often

- 4 -

have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009).

This Court need only agree with any one subsection of Section 2511(a), along with Section 2511(b), in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We conclude that the trial court in this case properly terminated

Mother's parental rights pursuant to Section 2511(a)(2) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(2), (b).

With respect to Section 2511(a)(2), this Court has stated:

> [T]he following three elements must be met (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). Further, we have explained that, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002) (citations omitted). In addition, "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." *Id*. at 340 (citation omitted).

With respect to Section 2511(b), this Court has explained that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. (citation omitted).

On appeal, with respect to the termination of her parental rights under Section 2511(a)(2), Mother asserts that the trial court abused its discretion because, in essence, the evidence demonstrates that she "has the present capacity to care for her son." Mother's Brief at 17. Mother asserts that she "cares for her child all day long several days a week at family school." *Id.* at 17. Further, Mother asserts that she completed her SCP objectives

- 7 -

regarding parenting classes, mental health, drug and alcohol treatment, and family school, and that she obtained a parenting capacity evaluation.

Contrary to Mother's assertion, the trial court found that Mother did not complete drug and alcohol treatment. T.C.O. at 3. Specifically, the court found as follows:

> [M]other has a twenty year history of drug abuse. [ ] [M]other testified that she has a history of relapsing on drugs while attending drug and alcohol programs. . . . [M]other had her parental rights terminated [to] two previous children due to her drug and alcohol abuse. [M]other ha[d] been in a drug and alcohol treatment program for at least one year prior to June 1, 2016. On July 9, 2015, [ ] [M]other tested positive for opiates. Moreover, on December 4, 2015, [ ] [M]other tested positive for [Phencyclidine] ["]PCP["]. . . .

*Id.* at 4 (citations to record omitted). Testimonial evidence supports the court's findings.

William Russell, Ph.D., performed a parenting capacity evaluation of Mother in October of 2015. He testified that Mother "reported a long-standing history of substance abuse and alcohol use dating back to the time when she was about 11 or 12 years of age." N.T. at 38.

Marvella Morris, the CUA social worker, testified that she has been involved with this family since April of 2015, and Mother has been in a methadone maintenance program at the Jefferson Family Center the entire time. N.T. at 13-16. She testified that Mother has not been discharged successfully from the program. *Id.* at 16. Ms. Morris explained that Mother received two positive test results from random drug screens at the Clinical

Evaluation Unit ("CEU"). *Id.* at 17-18. On July 9, 2015, when I.J.W. had been in placement for one and a half years, Mother tested positive for opiates. *Id.* Ms. Morris stated that Mother told her the positive result was "due to her eating an excessive amount of poppy seed bagels." *Id.* On December 4, 2015, Mother tested positive for PCP. *Id.* at 18. Ms. Morris testified that Mother "stated it must be a false positive due to her being prescribed Benadryl." *Id.*

Mother also disputed the positive drug screens during the involuntary termination hearing. She testified as follows on cross-examination:

Q. And is it your testimony today to the [c]ourt that you have not used any illicit drugs since [I.J.W.] has come into care?

A. That is correct.

Q. That the opiates was a false positive screen?

A. That is absolutely correct.

Q. And that the PCP is also a false positive screen?

A. Yes.

I have remained sober since August 15, 2014.

*Id.* at 63-64.

In addition to finding Mother failed to complete drug and alcohol treatment, the trial court determined that she failed to obtain appropriate housing. T.C.O. at 4. Specifically, the court found as follows:

[Mother] has lived in a shelter since the child was born. [M]other testified that the shelter where she currently resides is inappropriate for children. The social worker testified that

[M]other did not independently attempt to secure housing. Moreover, [M]other indicated that it was DHS's responsibility to obtain a house for her. She was not going to do anything to obtain suitable housing on her own initiative.

*Id.* (citations to the record omitted). Upon our review, we find the testimony of Ms. Morris and Mother supports the trial court's findings.

Further, the trial court relied upon Dr. Russell's opinion that Mother did not have the capacity to parent I.J.W. either at the time of his evaluation or approximately one year later at the time of the subject proceedings. T.C.O. at 4. Specifically, he opined that Mother cannot provide safety and permanency for I.J.W. DHS Exhibit #13, at 11; N.T. at 43-44. In his evaluation, Dr. Russell stated that Mother minimizes the concerns of DHS "regarding the removal of [I.J.W.] from her care." DHS Exhibit #13, at 11. He stated, "[i]t is unclear whether this behavior indicates failure to take responsibility for her actions or whether she truly understands why he was removed as well as her role in [his] removal." *Id.* Dr. Russell testified at the time of the termination hearing that Mother "still presents with all of the concerns that I had a year ago [when he performed the parenting capacity evaluation]." N.T. at 52. Therefore, Dr. Russell agreed on redirect examination that Mother does not have the capacity to parent. *Id.*

We observe that Chanel Randolph, the Family School social worker, testified that Mother had been attending the school from January of 2016 through the time of the hearing, for a period of six months. N.T. at 53-54. Ms. Randolph stated that Mother interacts with I.J.W. from 9:00 a.m. to

2:00 p.m. an unspecified number of times per week. *Id.* at 55. Based on her observations, Ms. Randolph asserted that she believes Mother has the ability to parent I.J.W. *Id.* at 55-56. To the extent that the trial court made credibility findings in favor of Dr. Russell and against Ms. Randolph, we defer to the court's determination in this regard. *See In re T.S.M.*, *supra*.

Based on the foregoing testimonial and documentary evidence, we discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to Section 2511(a)(2).[5] Indeed, DHS presented clear and convincing evidence that Mother's repeated and continued incapacity, neglect, or refusal to successfully complete her methadone maintenance program and to obtain appropriate housing has caused I.J.W. to be without essential parental care, control, or subsistence necessary for his physical or mental well-being for his entire life. Further, the causes of Mother's long-standing incapacity, neglect, or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, *supra*.

Finally, Mother argues that the trial court abused its discretion in terminating her parental rights pursuant to Section 2511(b). Specifically, Mother asserts that Ms. Randolph testified that, "there is a strong bond between mother and child." Mother's Brief at 20. Therefore, Mother argues

---

[5] Based upon this disposition, we need not consider Mother's issues regarding Sections 2511(a)(1), (5), and (8). *See In re B.L.W.*, *supra*.

that terminating her parental rights does not serve I.J.W.'s physical and emotional needs and welfare.  We disagree.

This Court has explained as follows:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.  *In re K.K.R.S.*, 958 A.2d 529, 533-536 (Pa. Super. 2008).  The mere existence of an emotional bond does not preclude the termination of parental rights.  *See In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child).  Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship."  *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003).  As we explained in *In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010),
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.  Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011).

In addition, in considering the affection a child may have for his or her natural parents, we have explained as follows.

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound.  If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage

- 12 -

and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d at 535 (internal citations and quotation marks omitted).

Moreover, our Supreme Court confirmed that, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *In re T.S.M.*, 620 Pa. at 629, 71 A.3d at 267. The Court further stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 629, 71 A.3d at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 631, 71 A.3d at 269. The *T.S.M.* Court observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Ms. Morris testified that there is a parental bond between Mother and I.J.W. N.T. at 32; T.C.O. at 5. However, she did not testify with respect to

any observations that led to her opinion regarding the existence of a bond between Mother and the child. Further, Ms. Morris acknowledged that I.J.W. is "attached to" and "well-bonded with" his foster parent, with whom he has lived since birth, and who is a pre-adoptive resource. N.T. at 25-26. Importantly, Ms. Morris indicated that I.J.W. could not be safely reunified with Mother as of the date of the hearing due to her lack of housing. *Id.* at 26. As such, Ms. Morris testified that, as of the date of the termination hearing, it was in I.J.W.'s best interest to remain in his foster home. *Id.* at 27.

Based on the foregoing testimonial evidence, we discern no abuse of discretion by the trial court in concluding that terminating Mother's parental rights will serve I.J.W.'s developmental, physical, and emotional needs and welfare. Accordingly, we affirm the decree terminating Mother's parental rights pursuant to Section 2511(a)(2) and (b). *See In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004) (stating that "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment").

Decree affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/30/2016